UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CUNEO LAW GROUP, P.C., ) <br> ) <br> and ) <br> ) <br> JONATHAN W. CUNEO, ) <br>   Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOEL D. JOSEPH ) <br> 11950 San Vicente Blvd., Suite 220 ) <br> Los Angeles, CA 90049, ) <br> ) <br>   Defendant. ) <br> ) | Case No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiffs seek a declaration of rights of the parties under 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, and Rule 57 of the Federal Rules of Civil Procedure. Plaintiffs also seek injunctive relief enjoining Defendant from further material breaches of a March 15, 2002, settlement agreement under Rule 65 of the Federal Rules of Civil Procedure.

2. The central issues are Defendant's previous loss of rights under that agreement and his continuing material breaches of the agreement in an attempt to circumvent the consequences of those breaches.

3. The settlement agreement in question resolved a civil action before this Court titled *Joseph v. Cuneo Law Group, P.C., et al.*, Civil No. 01-cv-01755 (RBW) ("the Lawsuit").

4. The parties to the Lawsuit are the same parties to the present case.

1

**The Parties**

5. Plaintiff The Cuneo Law group, P.C., is a District of Columbia Professional Corporation and a Citizen of the District of Columbia.

6. Plaintiff Jonathan W. Cuneo is an individual Citizen of the District of Columbia. He holds an interest in The Cuneo Law Group, P.C. Mr. Cuneo and The Cuneo Law Group are referred to collectively herein as "Cuneo."

7. The defendant, Joel D. Joseph, is a Citizen of California.

**Jurisdiction and Venue**

8. This Court has jurisdiction over this case. There is diversity of citizenship under 28 U.S.C. § 1332. The two plaintiffs are diverse from the defendant. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

9. Venue is proper in this jurisdiction and this Court has personal jurisdiction over Defendant Joseph. The contract at issue was executed on March 15, 2002, in the District of Columbia. The litigation that preceded the settlement was brought by Mr. Joseph in this Court and concerned Mr. Joseph's employment in the District of Columbia. Mr. Joseph previously sought to enforce the settlement in this Court. Cuneo previously sought declaratory relief concerning the settlement and Mr. Joseph asserted counter claims against Cuneo.

10. Declaratory relief is proper under 28 U.S.C. § 2201. There is an actual controversy between the parties that is immediate and ripe.

11. Injunctive relief is also proper. Cuneo has no adequate remedy at law and will suffer further irreparable harm if Defendant is not enjoined from further material violations of the settlement agreement.

12. There is no other litigation pending in federal or state court that would resolve the rights of the parties, except for Cuneo's motion for an injunction pursuant to the All Writs Act in the underlying action.

**Factual Allegations**

13. In early 2000, Mr. Joseph was engaged by The Cuneo Law Group, P.C., the predecessor firm of Cuneo Gilbert & LaDuca, LLP, to work at its offices in the District of Columbia.

14. On August 5, 2001, the firm received notice of a District of Columbia garnishment of any fees Cuneo owed to Mr. Joseph.

15. Cuneo in conformance with the garnishment notice was obligated to delay payment of the money owed to Mr. Joseph.

16. Mr. Joseph wanted the money in spite of the garnishment notice and he filed the Lawsuit in this Court on August 20, 2001, claiming the money and asserting a breach of the Cuneo employment contract. Mr. Joseph also asserted claims for *quantum meruit* and unjust enrichment with respect to certain contingency fee cases he worked on while at Cuneo.

17. Mr. Joseph wrongfully attempted to implement his claims by filing liens in Cuneo's pending cases and contacting Cuneo's various co-counsel.

18. Cuneo moved to dismiss Mr. Joseph's complaint. Thereafter, the Lawsuit was settled by an agreement dated March 15, 2002, referred to herein as the "Settlement Agreement."

19. The parties filed a praecipe of dismissal, which was followed by the Court's dismissal on April 2, 2002.

20. Cuneo, in conformity with the Settlement Agreement, promptly disbursed to Mr. Joseph the funds to which he was initially entitled.

21. The Settlement Agreement also provided that Mr. Joseph was to receive 20 percent (20%) of Cuneo's net fees, if any, in three (3) then-pending plaintiffs' contingency fee cases referred to as the Gold Train Case, the Leatherman Case, and the Kwikset Case.

22. To prevent any further interference, Cuneo insisted on a provision in the Settlement Agreement that Mr. Joseph would "make no attempt to interfere with the pending cases or cases that follow, nor ... attempt to file liens or notices of claim, or correspond with the litigants. If he does he has breached the agreement and waives his percentages."

23. Mr. Joseph also agreed in writing to "release all liens" and "not file any independent fee applications" and to "cooperate" with Cuneo "reasonably in the prosecution of these cases."

24. In early January 2006, Cuneo received payment in the first of the three cases, the Gold Train Case.

25. Cuneo promptly forwarded to Mr. Joseph or his assigns full payment of Mr. Joseph's percentage of the fees. Mr. Joseph accepted the amount paid as full payment of Mr. Joseph's percentage under the Settlement Agreement.

26. Mr. Joseph had no more claims with respect to the Gold Train Case. Nevertheless, Mr. Joseph wrongfully asserted monetary interests to which he was not entitled.

27. Mr. Joseph, in breach of the Settlement Agreement, corresponded with Cuneo's co-counsel in the Gold Train Case, Hagens Berman Sobol & Shapiro, LLP, of Seattle, Washington, and Dubbin & Kravetz, LLP, of Miami, Florida, demanding and noticing a claim for additional fees.

28. Mr. Joseph's claim for additional fees in the Gold Train Case substantially and materially interfered with the continuing prosecution and administration of that action.

29. Furthermore Mr. Joseph's actions threatened to disrupt relations between Cuneo and its co-counsel in the case and harmed Cuneo's reputation.

30. Cuneo, upon learning of Mr. Joseph's demands, caused a letter to be sent to Mr. Joseph advising Mr. Joseph that his demands to Cuneo's co-counsel breached the Settlement Agreement.

31. Mr. Joseph persisted in his pattern of breaching his written agreements to cooperate and cease his interference.

32. Mr. Joseph went further in breach of his written agreements. He sued Cuneo's co-counsel in federal court in Florida seeking additional fees in the Gold Train Case, to which he, Mr. Joseph, was not entitled.

33. The Florida case was assigned to the same Federal Judge who oversaw the Gold Train Case, The Honorable Patricia Seitz.

34. In order to preserve Cuneo's good relations required for the successful administration of the Gold Train Case, Cuneo agreed to fully indemnify Cuneo's co-counsel for fees and costs and any judgment Mr. Joseph might obtain.

35. The Florida court initially dismissed Mr. Joseph's lawsuit.

36. Mr. Joseph then sought to amend his complaint to allege a multi-million dollar claim against the Hagens Berman firm on the ground that it tortiously interfered with Mr. Joseph's contractual relationship with Cuneo.

37. The Florida court dismissed that claim as well. The suit was settled to avoid the delay and expense of defending an appeal.

38. On February 12, 2008, Cuneo received payment in the Leatherman Case.

39. Cuneo promptly filed a declaratory judgment action in the United States District Court for the District of Columbia (*Cuneo Law Group, P.C. et al. v. Joseph*, Case No. 08-0253 (RBW) seeking a declaration that Mr. Joseph had materially breached his obligations under the Settlement Agreement and thereby lost his entitlement to any percentage of the fee in the Leatherman Case.

40. Mr. Joseph filed counterclaims including claims for breach of contract, *quantum meruit* and unjust enrichment.

41. On March 27, 2009, the Court issued an Order granting Cuneo's motion for summary judgment on the declaratory judgment claim, and granting Cuneo's motion to dismiss Joseph's counter claims.

42. On November 19, 2009, this Court issued a Memorandum Opinion explaining its reasoning behind the March 27 Order. The Court explained that Mr. Joseph had, by his actions, materially breached the Settlement Agreement, thereby losing his entitlement to any percentage of the fee in the Leatherman and Kwikset Cases. The Court also held that by entering into the Settlement Agreement Mr. Joseph forfeited his legal right to a determination on the merits of his *quantum meruit* and unjust enrichment claims.

43. This Court's judgment was affirmed by the United States Court of Appeals for the District of Columbia Circuit on June 17, 2011. On December 12, 2011, the United States Supreme Court denied Mr. Joseph's petition for a writ of certiorari.

44. Mr. Joseph has continued his pattern of intentionally interfering with the cases subject to the Settlement Agreement, in material breach of that agreement.

45. On June 9, 2009, after this Court had issued its Order, but before it issued its Memorandum Opinion, Mr. Joseph filed suit in state court in California against Cuneo and Cuneo's co-counsel in the Leatherman Case, Henry Rossbacher and The Rossbacher Firm, seeking recovery in *quantum meruit* and for unjust enrichment in the Leatherman Case. The California court ultimately sustained demurrers to Mr. Joseph's complaint based on this Court's prior judgment.

46. Mr. Joseph's interference continued with respect to the Kwikset Case, in further violation of the Settlement Agreement.

47. On August 5, 2011, Mr. Joseph met with one of the plaintiffs in the Kwikset Case and attempted to induce him to obstruct any settlement of that case unless Mr. Joseph received payment, in violation of the Settlement Agreement.

48. On August 31, 2011, Mr. Joseph filed a Verified Notice of Attorney's Lien in the Kwikset Case, in violation of the Settlement Agreement.

49. On January 27, 2012, the Kwikset Case was dismissed pursuant to an agreement of the parties, which includes a payment of attorneys' fees to Cuneo and his co-counsel. Cuneo and his co-counsel agreed to indemnify, defend, protect and hold harmless the Kwikset Defendants against any other claims for attorneys' fees. The Kwikset

Defendants paid the agreed attorneys' fee into a special bank account established for the benefit of all Plaintiffs' Counsel.

50. On February 6, 2012, Mr. Joseph wrote Fredrick Rafeedie, Esquire, counsel for the Kwikset Defendants, and threatened to sue the Kwikset Defendants unless Mr. Joseph's purported attorneys' lien was satisfied, in violation of the Settlement Agreement.

51. Cuneo's co-counsel in the Kwikset Case and the Kwikset Defendants are intended third-party beneficiaries of the Settlement Agreement.

52. Mr. Joseph has lost his entitlement to any percentage of Cuneo's fee in the Kwikset Case, which he would have had if he had not materially breached his obligations, as aforesaid, in the Settlement Agreement.

53. Mr. Joseph has also forfeited his rights, if any, by entering into the Settlement Agreement, to seek payment for his involvement in the Kwikset Case from Cuneo, his co-counsel or the Kwikset Defendants under theories of *quantum meruit* or unjust enrichment, or through any asserted attorneys' lien.

### Right to Declaratory Relief

54. All preceding paragraphs are incorporated herein.

55. Cuneo is entitled to declaratory relief under 28 U.S.C. § 2201 based on Mr. Joseph's repeated material violations of the Settlement Agreement.

56. Mr. Joseph materially violated the Settlement Agreement by and through the following actions, among others, in addition to those actions previously found by the Court to be material violations:

A. Filing a baseless lawsuit against Cuneo's co-counsel in the Leatherman Case, despite the fact that this Court had already dismissed his claims for *quantum meruit* and unjust enrichment, causing disruption of Cuneo's relations with its co-counsel and the type of reputational harm that Cuneo had sought to prevent by entering into the Settlement Agreement;

B. Interfering with the Kwikset Case by attempting to induce one of the plaintiff to obstruct any settlement of the case;

C. Filing a notice of attorneys' lien in the Kwikset Case; and

D. Threatening suit against Kwikset if his purported attorneys' lien was not satisfied, causing disruption of Cuneo's relations with its co-counsel and counsel for the Kwikset Defendants and the type of reputational harm that Cuneo had sought to prevent by entering into the Settlement Agreement.

### Right to Injunctive Relief

57. All preceding paragraphs are incorporated herein.

58. Cuneo is entitled to injunctive relief. Mr. Joseph's material violations of the Settlement Agreement are clear and continuing.

59. Cuneo has expended and will continue to expend money and resources defending against Mr. Joseph's baseless claims and has suffered irreparable harm to his professional reputation due to Mr. Joseph's actions. Cuneo has no adequate remedy at law.

60. Mr. Joseph will not be harmed by the issuance of an injunction. He has had an opportunity to fully and fairly litigate his claims against Cuneo and chose to enter into a Settlement Agreement resolving all those claims. An injunction simply would require

him to abide by his own agreement, from which he already has reaped substantial payments.

**Prayers for Relief**

WHEREFORE, Cuneo respectfully seeks the entry of a declaration from this Court that:

(1)     Mr. Joseph committed continued material breaches of the March 15, 2002, Settlement Agreement with Cuneo, in addition to those previously found by the Court;

(2)     Mr. Joseph, because of the material breaches, lost his right to be paid any percentage of the fee in the Kwikset Case;

(3)     Mr. Joseph, by entering into the Settlement Agreement, gave up his rights, if any, to seek payment for the Kwikset Case under *quantum meruit* and/or unjust enrichment from Cuneo, Cuneo's co-counsel or the Kwikset Defendants; and

(4)     Mr. Joseph pay fees and costs as appropriate.

Cuneo further requests that the Court issue an injunction permanently enjoining Mr. Joseph from further interference with the Kwikset Case, including, but not limited to, suing Cuneo, Cuneo's co-counsel and/or the Kwikset Defendants in any forum seeking payment from any of them for Mr. Joseph's involvement in the Kwikset Case under *quantum meruit*, unjust enrichment or pursuant to any asserted attorneys' lien.

February 14, 2012                    Respectfully submitted,

                                     CUNEO GILBERT & LaDUCA, LLP

                                     _____
                                     Jonathan W. Cuneo (D.C. Bar No. 939389)
                                     David W. Stanley (D.C. Bar No. 174318)
                                     507 C Street, N.E.
                                     Washington, DC 20002
                                     (202) 789-3960 * Fax (202) 789-1813
                                     E-mail: davids@cuneolaw.com

OF COUNSEL:

JACOB A. STEIN (D.C. Bar No. 052233
STEIN, MITCHELL & MUSE, L.L.P.
1100 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036
(202) 737-7777 * Fax (202) 296-8312
E-Mail: jstein@steinmitchell.com