UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
THE CUNEO LAW GROUP, P.C., et al.,   )
                                                    )
               Plaintiffs,              )
                                                    )
     v.                                         )    Civil Action No. 12-0246 (RBW)
                                                    )
JOEL D. JOSEPH,                               )
                                                    )
                                                    )
               Defendant.              )
_____)

**MEMORANDUM OPINION**

       The plaintiffs, The Cuneo Law Group, P.C. and Jonathan W. Cuneo, seek a declaratory judgment pursuant to 28 U.S.C. § 2201 (2006) regarding the parties' respective rights under a settlement agreement resolving previous litigation between the parties and injunctive relief prohibiting future breaches of the agreement. First Amended Complaint for Declaratory and Injunctive Relief ("Am. Compl.") ¶¶ 55–60. This matter is before the Court on the defendant's Motion to Dismiss the Amended Complaint or in the Alternative, Transfer the Case to the Central District of California ("Def.'s Dismissal Mot."), and the plaintiffs' Motion for Summary Judgment and Permanent Injunction ("Pls.' Summ. J. Mot."). Upon consideration of the parties' submissions,[1] the Court concludes that it must grant in part and deny in part the defendant's motion to dismiss, deny the plaintiffs' motion for summary judgment, and dismiss this case for lack of jurisdiction.

---

[1] In addition to the filings already referenced, the Court considered: (1) the defendant's Statement of Points and Authorities in Support of the Motion to Dismiss the Amended Complaint, or in the Alternative, Transfer the Case to the United States District Court for the Central District of California ("Def.'s Dismissal Mem."); (2) the Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Complaint or in the Alternative, Transfer the Case to the Central District of California ("Pls.' Dismissal Opp'n"); (3) the plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment and Permanent Injunction ("Pls.' Summ. J. Mem."); (4) the defendant's Statement of Points and Authorities in Opposition to the Motion to [sic] for Summary Judgment and for a Permanent Injunction ("Def.'s Summ. J. Opp'n"); and (5) the Plaintiffs' Reply to Defendant's Opposition to Their Motion for Summary Judgment and Permanent Injunction ("Pls.' Summ. J. Reply").

## I. BACKGROUND

The long-running dispute between the parties originated with the defendant's employment by The Cuneo Law Group ("Cuneo") as a staff attorney and then as an independent contractor. See Cuneo Law Grp., P.C. v. Joseph, 669 F. Supp. 2d 99, 102–03 (D.D.C. 2009) (Walton, J.), aff'd, 428 F. App'x 6 (D.C. Cir. 2011). A complete recounting of the history of the parties' discord is provided in the Court's opinion in the earlier case just cited and which involved the same settlement agreement that is the subject of the current litigation. See Cuneo Law Grp., 669 F. Supp. 2d at 102–05. The following facts are taken from the plaintiffs' statement of material facts as to which there is no genuine issue, none of which are disputed by the defendant in his opposition. See generally Def.'s Summ. J. Opp'n.

In 2002, the parties entered into a settlement agreement ("Settlement Agreement") resolving prior litigation related to the defendant's employment with Cuneo. See Pls.' Summ. J. Mem. at 9. In pertinent part, the Settlement Agreement provided that the defendant was to receive twenty percent of the attorneys' fees awarded in three then-pending cases, referred to as the "Gold Train, Leatherman, and Kwikset cases," Pls.' Summ. J. Mem. Exhibit ("Ex.") B at 4,[2] and in exchange, the defendant "shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants. If he does he has breached the agreement and waives his percentages," id. at 2. The Settlement Agreement further provided that "[t]he parties release each other of any and all claims of any type whatsoever . . . ." Id.

In 2008, the plaintiffs sought a declaratory judgment from this Court that the defendant had materially breached the Settlement Agreement and was therefore not entitled to twenty

---

[2] The Court will use the pagination of the electronic filing system because the plaintiffs did not number the pages of the exhibit.

percent of any attorneys' fees awarded to Cuneo in the Leatherman and Kwikset cases. Pls.' Summ. J. Mem. at 10. The plaintiffs alleged that the defendant had contacted and then sued Cuneo's co-counsel in the Gold Train case seeking additional payment from the attorneys' fees awarded in that case. Id. Due to these breaches of the Settlement Agreement, the plaintiffs refused to pay the defendant any percentage of the attorneys' fees he otherwise would have received in the Leatherman case. See id. On March 27, 2009, this Court issued an order granting the plaintiffs' motion for summary judgment based upon the finding that the defendant materially breached the Settlement Agreement. Id. The Court set forth its reasoning in the memorandum opinion referenced above.

On June 9, 2009, the defendant sued Cuneo's co-counsel in the Leatherman case in California state court, seeking additional payment from the attorneys' fees awarded in that case. Id. at 11. The defendant subsequently contacted one of the plaintiffs in the Kwikset case and attempted to persuade him "to obstruct any settlement of that case unless [the defendant] received payment" and also filed an attorney's lien. Id. Once the Kwikset case settled, the defendant contacted and threatened to sue defense counsel in that case, and ultimately filed suit against a variety of individuals and entities associated with the case seeking a portion of the settlement funds. Id. at 12.

The plaintiffs instituted the current suit on May 11, 2012, seeking a declaratory judgment finding (1) that the defendant has "committed continued material breaches" of the Settlement Agreement and that "because of the material breaches," the defendant is no longer entitled to any of the monies paid to Cuneo in connection to the Kwikset settlement; (2) that the defendant "gave up his rights, if any, to seek payment for the Kwikset [c]ase under quantum meruit and/or unjust enrichment from Cuneo, Cuneo's co-counsel or the Kwikset [d]efendants;" and (3) that the defendant "pay [the plaintiffs'] fees and costs" arising from the current litigation. Am.

3

Compl. at 10. The plaintiffs also requested a permanent injunction enjoining the defendant from further breaching his obligations under the Settlement Agreement. Id. at 10–11.

The defendant subsequently filed a motion to dismiss, arguing that the plaintiffs' claims are barred by claim preclusion. Def.'s Dismissal Mem. at 1–3. In the alternative, the defendant sought transfer of the case to the Central District of California. Id. at 3–6. While the motion to dismiss was still pending, the plaintiffs filed their motion for summary judgment and for a permanent injunction. Pls.' Summ. J. Mot. at 1.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making this assessment, a plaintiff receives the "benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted). But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement. Iqbal, 556 U.S. at 678. Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679. Although generally raised as an affirmative defense, the doctrine of res judicata may be raised in

a pre-answer motion to dismiss under Rule 12(b)(6).  See Stanton v. Dist. of Columbia Ct. of Appeals, 127 F.3d 72, 76–77 (D.C. Cir. 1997).

**B.  Rule 56(a)**

A motion for summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party" and must "draw all reasonable inferences in favor of the nonmoving party."  Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," on which the party bears the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

### III. ANALYSIS

**A.  Transfer of case**

Before turning to the question of dismissal, the Court finds that transfer of the case to the Central District of California is not appropriate.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a) (2006).  District courts enjoy broad discretion in determining whether transfer of a case pursuant to § 1404 is warranted.  See SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978).  The inquiry requires a "case-by-case determination of convenience and fairness."  Id.

The circumstances here present little justification for transferring this case. The only consideration that weighs in favor of transfer is the defendant's convenience since he now resides in California. See Def.'s Dismissal Mem. at 5. The other relevant considerations all counsel against transfer. The Court's resolution of this case based on the parties' pleadings and briefs (for the reasons explained infra) obviates the need to consider the convenience of any potential witnesses or the location of any evidence. The plaintiffs chose to bring their case before this Court, and object to the defendant's request to transfer the case. See Pls.' Dismissal Opp'n at 2. And perhaps most importantly, two prior cases between the parties in this litigation have been heard and adjudicated by this Court. Transferring this case would require another court to expend its limited time and resources familiarizing itself with the lengthy history of this case and the relevant law when this Court has already done so. To create such a duplication of efforts is not in the interest of justice. Therefore, the Court declines to transfer this case in the exercise of its discretion.

**B. Impact of the Court's prior opinion**

The Court's prior opinion interpreting the Settlement Agreement and adjudicating the parties' respective rights under the Agreement raises the possibility that the doctrine of res judicata bars some or all of the plaintiffs' claims. The doctrine of res judicata refers collectively to the related concepts of claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008); I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co., 723 F.2d 944, 946 (D.C. Cir. 1983).[3] Under claim preclusion, "a final judgment on the merits in a prior suit involving the same parties or their privies bars subsequent suits based on the same cause of action." I.A.M. Nat'l Pension Fund, 723 F.2d at 946–47 (citing Parklane Hosiery Co. v. Shore,

---

[3] Because "[t]he preclusive effect of a federal-court judgment is determined by federal common law," the Court must apply controlling federal law in determining the applicability of res judicata in this case. Taylor, 553 U.S. at 891.

6

439 U.S. 322, 326 n.5 (1979)). Issue preclusion addresses a different problem, so that a final judgment on the merits in an earlier suit bars "subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action." Id. at 947 (citing same). Because "res judicata belongs to courts as well litigants," a court may raise the issue sua sponte. Stanton, 127 F.3d at 77.

In his motion to dismiss, the defendant argues that under claim preclusion, the plaintiffs' claims and request for injunctive relief are barred by the prior litigation between the parties. Def.'s Dismissal Mem. at 2–3. However, the Court need not reach that issue, because it has identified a defect in the plaintiffs' complaint involving issue preclusion, which operates to deprive the Court of subject matter jurisdiction over this case. The plaintiffs' declaratory judgment claim seeks a declaration finding (1) that the defendant "committed continued material breaches of the March 15, 2002, Settlement Agreement with Cuneo;" (2) that the defendant, "because of the material breaches, lost his right to be paid any percentage of the fee in the Kwikset [c]ase;" (3) that the defendant, "by entering in to the Settlement Agreement, gave up his rights, if any, to seek payment for the Kwikset [c]ase under quantum meruit and/or unjust enrichment from Cuneo, Cuneo's co-counsel or the Kwikset [d]efendants;" and (4) that the defendant pay the plaintiffs' fees and costs in this action. Am. Comp. at 10. The plaintiffs also ask the Court to enjoin the defendant from further breaching his obligations under the Settlement Agreement. Id. at 10–11. The plaintiffs assert diversity jurisdiction under 28 U.S.C. § 1332 (2006) as the basis for the Court's jurisdiction, alleging that the amount in controversy exceeds $75,000. Id. at 2.

The plaintiffs' potential recovery of money damages, however, depends on the Court's adjudication of an issue that was already litigated before this Court and determined in its prior opinion. With respect to the plaintiffs' obligation to pay the defendant a twenty percent share of

the attorneys' fees obtained for the Kwikset case, this Court determined that the defendant had materially breached the Settlement Agreement and thus held, "because the defendant materially breached the 2002 Settlement Agreement . . . the plaintiffs were relieved of their duty to pay him 20% of the net fees they acquired in the Leatherman and Kwikset cases, as would have been required by the 2002 Settlement Agreement." Cuneo Law Grp., 669 F. Supp. 2d at 125. The plaintiffs recognize as much in their motion for summary judgment, which states that "[t]he Court held that [the defendant] had, by contacting and suing Cuneo's Gold Train co-counsel, materially breached the 2002 Settlement Agreement, thereby losing his entitlement to any percentage of the fees in the Leatherman and Kwikset cases." Pls.' Summ. J. Mem. at 10 (emphasis added). Since this issue was actively litigated by the parties and determined by the Court in the 2008 litigation, issue preclusion bars the Court from considering it again here.

Because the amount in controversy is entirely predicated on the Court's consideration of an issue that is barred by issue preclusion, the asserted basis for jurisdiction fails. Diversity jurisdiction under § 1332 requires that the amount in controversy in a civil action exceed $75,000. 28 U.S.C. § 1332. Whether a complaint states a sufficient amount in controversy is generally determined at the time the complaint is filed, and "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289–90 (1938). However, "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff was never entitled to recover that amount . . . the suit will be dismissed." Id. at 289. A court must thus distinguish "between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." Jones v. Knox Exploration Corp., 2 F.3d 181, 183 (6th Cir. 1993). When faced with similar circumstances, the Third Circuit opined that it would consider

the reduction in the amount of controversy through application of res judicata to be appropriately placed in the latter category, depriving the court of jurisdiction. Carlisle v. Matson Lumber Co., 186 F. App'x 219, 227 (3d Cir. 2006).

Following the reasoning of the Third Circuit, the Court agrees that the circumstances here deprive the Court of jurisdiction. The plaintiffs were never entitled to recover any monetary damages in this action because the Court's consideration of the plaintiffs' entitlement to damages was barred by the doctrine of res judicata at the time the complaint was filed. The Court's determination that the plaintiffs' claim for damages is precluded by the Court's prior opinion is thus a "subsequent revelation" that the amount in controversy was, in fact, not in controversy at the time the plaintiffs filed their complaint. Without the claim for money damages resulting from the defendant's breach of the Settlement Agreement, there is no amount in controversy in this case, let alone an amount sufficient to satisfy the requirements of § 1332. The Court finds no other basis for jurisdiction here. See generally Am. Compl. Accordingly, the Court lacks subject matter jurisdiction over this case, and must dismiss the plaintiffs' claims for that reason.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss only to the extent that the relief sought by the defendant is granted, and to deny it in all other respects, and to deny the plaintiffs' motion for summary judgment.[5]

REGGIE B. WALTON
United States District Judge

---

[4] Because the Court concludes that it does not have subject matter jurisdiction over the plaintiffs' claims, it does not reach the issue of whether injunctive relief is appropriate to enjoin the defendant from further breaching his obligations under the Settlement Agreement. Nonetheless, the Court notes that it perceives a serious question as to whether such relief could be granted as a result of established principles of contract law preventing a court from awarding both enforcement of a contract and liquidated damages to redress a breach of contract. See 12 Arthur Linton Corbin, Corbin on Contracts §§ 1216, 1222 (2d ed. 2002) ("[T]he injured party should not be allowed to enforce and receive specific performance and at the same time get judgment for damages for a total breach.").

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.